IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re: | ) In Proceedings |
| | ) Under Chapter 13 |
| KATRINA M. BRIDGES, | ) |
| | ) Bk. No. 19-31012 |
| Debtor. | ) |

## OPINION

The issue presented is whether the Court can confirm a Chapter 13 Plan with a term beyond five years by setting the confirmation date to a date prior to the enactment of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act" or "Act) to allow the debtor to use provisions of that Act that permit debtors to modify a confirmed plan to extend the term beyond five years.

## FACTS

The Debtor, Katrina M. Bridges ("Debtor") filed a Chapter 13 petition on July 30, 2019. The Chapter 13 Trustee filed an objection to the Debtor's Plan arguing, among other points, that the Plan did not provide sufficient funding to pay allowed secured and priority claims, as well as required distributions to allowed general unsecured claims. In other words, the Plan did not provide a sufficient base of funding to complete in the proposed sixty-month term. The objection was resolved at the confirmation hearing on October 10, 2019 with an Order granting the Debtor thirty days to file an amended plan.

The Debtor filed her First Amended Plan on November 12, 2019, garnering another objection from the Trustee as to funding. That objection was resolved by an Agreed Order entered on January 13, 2020 granting the Debtor thirty days to file another amended plan. The Debtor filed her Second Amended Plan on February 25, 2020, and the Trustee filed an objection on February 27, 2020, asserting again that the Second Amended Plan lacked sufficient funding.

1

A hearing on the Trustee's Objection was set for April 30, 2020. In the interim, on March 27, 2020, the CARES Act was signed into law and became immediately effective.

At the hearing on April 30, 2020, Debtor's counsel argued that the Court has discretion to retroactively confirm the Debtor's Plan to enable the Debtor to take advantage of a provision in the CARES Act that allows a debtor to modify a confirmed plan to extend the plan term beyond five years. The parties subsequently filed briefs on the issue raised by the Debtor.

## **DISCUSSION**

Section 1113 of the CARES Act makes changes to the Bankruptcy Code, including amendments to 11 U.S.C. §1329, the Chapter 13 provision entitled "Modification of plan after confirmation". Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, March 27, 2020, Sec. 1113(b)(1)(C). The CARES Act amendment to §1329 states:

> (C) MODIFICATION OF PLAN AFTER CONFIRMATION. – Section 1329 of title 11, United States Code, is amended by adding at end the following:
>
> (d)(1) Subject to paragraph (3), for a plan confirmed prior to the date of enactment of this subsection, the plan may be modified upon the request of the debtor if –
>
> > (A) the debtor is experiencing or has experienced a material financial hardship due, directly or indirectly, to the coronavirus disease 2019 (COVID-19) pandemic; and
> >
> > (B) the modification is approved after notice and a hearing.
>
> (2) A plan modified under paragraph (1) may not provide for payments over a period that expires more than 7 years after the time that the first payment under the original confirmed plan was due.
>
> (3) Sections 1322(a), 1322(b), 1323(c), and the requirements of section 1325(a) shall apply to any modification under paragraph (1).[1]

Therefore, newly added §1329(d)(2) now allows certain debtors to modify their confirmed

---

[1] Sections 1322(a) and 1322(b) set forth the required contents of a Chapter 13 Plan. Section 1323 is entitled "Modification of plan before confirmation" and §1323(c) addresses the effect of a plan modification on the holder of a secured claim. Section 1325(a) provides additional requirements for plan confirmation.

Chapter 13 plans to extend the duration of those plans beyond the 5-year term proscribed by the Bankruptcy Code.[2]

Further defining the applicability of the amendments to §1329, Section 1113(b)(1)(D) of the CARES Act states:

> (D) APPLICABILITY. –
>
> (i) The amendments made by subparagraphs (A) and (B) shall apply to any case commenced before, on, or after the date of enactment of this Act.[3]
>
> (ii) The amendment made by subparagraph (C) shall apply to any case for which a plan has been confirmed under section 1325 of title 11, United States Code, before the date of enactment of this Act.

The matter presented to the Court is whether the Debtor, whose Chapter 13 Plan is not yet confirmed, may avail herself of newly added §1329(d)(2), which allows modification of a plan to include a term beyond five years. The tenets of statutory construction demand that the Court begin with the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). Where the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Id*. (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). The Court need look no further, as "the plain language of a statute is the most reliable indicator of congressional intent." *Baker v. Runyon*, 114 F.3d 668, 670 (7th Cir. 1997), *cert. denied, Baker v. Henderson*, 525 U.S. 929 (1998) (citing *Time Warner Cable v. Doyle*, 66 F.3d 867, 876 (7th Cir. 1995), *cert. denied, Doyle v. Time Warner Cable*, 516 U.S. 1141 (1996)).

The plain language of the CARES Act amendment compels the conclusion that the Debtor's Plan does not qualify for an extended term under §1329(d)(2). Section 1113(b)(1)(D) of

---

[2] Sections 1322(d)(2) and 1325(b)(4) limit the duration of a Chapter 13 plan to a term of three to five years, but pursuant to §1322(d)(2), "the court may not approve a period that is longer than 5 years."

[3] Subparagraph (A) amends §101(10A)(B)(ii) to provide that payments received under Federal law for COVID relief are excluded from calculations of current monthly income. Subparagraph (B) amends §1325(b)(2) to provide that payments received under Federal law for COVID relief are not included in calculating "disposable income".

the CARES Act, the "Applicability" provision, states that "amendments made by subparagraph (C), shall apply to any case for which a plan *has been confirmed* under section 1325 of title 11, United States Code *before* the date of enactment of this Act." (Emphasis added.) Subparagraph (C), the provision allowing a debtor to extend the term of her plan beyond five years, is titled "MODIFICATION OF PLAN *AFTER CONFIRMATION*" and the original Bankruptcy Code section it amends, §1329, is likewise titled "Modifications of plan *after confirmation*". (Emphasis added.) Finally, newly added §1329(d)(2) itself limits the extended plan term to not more than "7 years after the time that the first payment *under the original confirmed plan* was due." (Emphasis added.) The language used throughout the statute dictates that only plans that have been confirmed prior to March 27, 2020, "the date of enactment" of the CARES Act, may be modified to include the extended term. The Debtor's Plan was not confirmed prior to March 27, 2020. Therefore, according to the plain language of the statute, the Debtor's Plan does not qualify for modification beyond a five-year term.

      The Debtor argues that the Court has discretion under §105(a) of the Bankruptcy Code to confirm her Plan with an effective date prior to the enactment of the CARES Act so that the Plan may be modified pursuant to the Act. To the contrary, §105(a) does not grant the Court authority to ignore the explicit mandates of the CARES Act amendments. Section 105(a) provides -

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. §105(a).

Despite the seeming breadth of this provision, the Supreme Court has established the boundaries within which a bankruptcy court must operate when exercising its equitable authority under

§105(a). *See Law v. Siegel*, 571 U.S. 415, 420-421 (2014). Explaining those limits, the Supreme Court cautioned that "in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." *Id*. at 421. The Court elaborated:

> It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' 2 *Collier on Bankruptcy* ¶ 105.01[2], p. 105–6 (16th ed. 2013). Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere…We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code'. *Id.* (citations and footnote omitted).

In the instant case, therefore, the Court may not use §105(a) to set a fictional "effective" confirmation date in order to circumvent the provisions of newly added §1329(d). Those statutory provisions specifically limit their application to plans *confirmed* prior to the enactment of the CARES Act.

Nor can the Court use its authority to enter *nunc pro tunc* orders to "back date" confirmation of the Debtor's Plan. In *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995), the Seventh Circuit described the limits of the court's *nunc pro tunc* powers, stating, "[t]he power to correct erroneous records does not imply ability to revise the substance of what transpired or to back-date events."  In *Kusay*, the Court refused the government's request to retroactively bestow jurisdiction on the district court by issuing a mandate *nunc pro tunc*. In so refusing, the Court explained, "[t]he United States does not ask us to correct records to show what happened; it wants us to change history. Incantation of Latin phrases does not bestow such an Orwellian power." *Id.* Likewise, the Debtor here asks the court to rewrite history by stating that her Plan was confirmed before the enactment of the CARES Act when it was in fact not yet confirmed on that date. To back-date an event to allow a party to apply an otherwise inapplicable

5

statutory provision would violate the edicts of both the Supreme Court in *Law v. Siegel* and the Seventh Circuit in *Kusay v.United States*.

Finally, the Debtor's argument rests upon tortured logic. When interpreting a statute, the Court may not adopt a view of the statute that ignores its plain meaning and would produce an absurd result. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 252 (2010). The Debtor asks the Court to confirm her plan using the CARES Act provision that allows modifications, so that her Plan may in turn be eligible for modification under that Act. Moreover, as the Trustee notes in his brief, to backdate confirmation prior to March 27, 2020 would also require the Court to confirm the Plan as of a date when an objection to confirmation was pending and set for hearing. The result requested by the Debtor would not only confound logic, but would create confusion in this case and set unclear precedent for both pending and future Chapter 13 cases.

The Court is aware of the hardships facing debtors as a result of the coronavirus pandemic. The legislative relief provided by the CARES Act amendments to the Bankruptcy Code may not address every debtor's situation, but the Court is bound by the language of the Act nonetheless.[4]

## **CONCLUSION**

Based upon the foregoing, the Trustee's Objection to Second Amended Plan is SUSTAINED. A separate Order shall enter.

ENTERED: July 30, 2020

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE

---

[4] It is worth noting that the Debtor filed her Chapter 13 bankruptcy in July, 2019 and was unable to propose a plan with sufficient funding prior to March, 2020 when the financial effects of the coronavirus pandemic began.